# FOR THE DISTRICT OF COLORADO

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

SEP 21 2018

JEFFREY P. COLWELL
CLERK

| | | |
|---|---|---|
| Alyssa-Chrystie: Montalbano | § | |
| Plaintiff | § | CIVIL ACTION NO.:_____ |
| | § | 1:18-cv-02060-RM-GPG |
| v. | § | |
| | § | |
| James Corey Goode | § | **JURY TRIAL DEMANDED** |
| Defendant | § | |
| | § | |
| | § | |

## REPLY TO DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Plaintiff, Alyssa Chrystie Montalbano, makes this following reply to Defendant, James Corey Goode's Document 13, ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS:

1.          Documents 13 still remains lawfully unserved per FRCP 5, however it requires a response.

### REPLY TO GENERAL DENIAL

2.          On Page 1 thru Page 6, section titled GENERAL DENIAL, Defendant by and through his counsel simply denies the facts (obviously) and denial of evidence does not constitute a response. (FRCP 37(a)(4)).

3.　　　On page 3, number 1, **Defendant agrees that Plaintiff sent him presentments by way of USPS mail.** Thereby Defendant has acknowledged for the record his receipt of the legal presentments.

**Defendant further agrees he has received hundreds of emails from Plaintiff.** This is the private property Plaintiff opened a lawsuit to protect against further mutilated and/or derivative works being created by Mr. Goode and/or his associates.

**Mr. Goode then proceeds to allege he's not read Plaintiff's materials (denial). However, in open court on July 24, 2018,** while Mr. Goode was trying to attain the unlawful permanent stalking protection order against Plaintiff, Mr. Goode stated for the record to Magistrate Russell, that Plaintiff sent "inappropriate" messages. If Mr. Goode **was not reading** the messages, how would he know if they were "inappropriate" or not?. If he **was reading** them, why did he not bother to say anything about these alleged "inappropriate" messages to Plaintiff until *after* Plaintiff began due process of law for remedy and attribution due?. Either way, regardless to what story Mr. Goode wishes to tell: 1) Reading the emails or 2) Not reading the emails; the evidence remains the same and incudes Mr. Goode's alleged January 12, 2018 "Mega Update" as a partial derivative work with a basis on Plaintiff's dream vision experiences. (See Samples attached as Exhibit 8)

4.       On page 3, number 1, letter c; Defendant by and through his counsel mentions that the temporary stalking protection order was granted. **What Defendant's counsel also failed to say (more withholding of evidence from the courts)** is that she and Defendant tried to attain a stalking protection order once prior (a month earlier). **Their first attempt was June 16, 2018 and was performed after Defendant and Counsel knew Plaintiff was filing the legal presentments** onto the public record (Document 12-1 at 54 and 56) as evidence against Mr. Goode in preparation for opening a lawsuit.

In Defendant recently filed Document 34-5 (June 5, 2018 emails) Defendant by and through his Counsel admits they both had full knowledge of legal presentments and as reaffirmed in their June 5, 2018 (Doc 34-5) email conversations with a former mutual associate Ms. Medvedich. The email clearly shows Defendant and his Counsel had full knowledge of the pending lawsuit, Complaint, and their legal responsibility to respond. This is also the same date (June 5, 2018) on Ms. Yanaros Wilde's first frivolous presentment (Document 12-1 at 49 thru 52). **Document 34-5 is more new evidence directly contrary to Defendant and Counsel's own Declarations** where they both declared for the record they didn't know about the complaint until July 13, 2018. Additionally, Plaintiff only served

courtesy copies of the complaint on Mr. Rysavy, CEO, (former mutual associate) and Mr. Weidner, Senior Director of Content (former mutual associate) (Document 39 at 19), not on Ms. Medvedich. Courtesy copies were served to the CEO and Senior Director of Content as they would be affected parties and to ensure Mr. Goode was aware of his legal responsibility as Plaintiff had no other contact information for Mr. Goode other than Defendant's business email, GAIA INC address, and Broomfield UPS box; and whereby notification of legal responsibility is the first essential of due process of law.

**During mid-June** 2018 and per Plaintiff's conversations with the Broomfield courts, **Ms. Montalbano was told by the court clerk that what Defendant and his Counsel tried to file did 'not meet the requirements' and thereby a case was not opened.** After that Defendant and his counsel avoided and evaded service of summons on Mr. Goode for case 18CV50 through mid-July. Note in Ms. Yanaros Wilde's recently filed Declaration (Document 34-2, page 2, number 8) she states she was injured during July 1 thru 13, 2018 and alleges she didn't receive the Summons till then. However, the summons documents arrived at her office on Wednesday (a work day) June 27, 2018 at 10:27am (Document 39 at 23 Exhibit P – Valerie Summons Copy) prior her alleged neck injuries.

Subsequently, Defendant and his Counsel (rather than respond to the complaint) tried a second time for a fraudulent temporary stalking protection order. However, **they knew whatever they submitted the month prior 'did not meet the requirements' for them to attain the fraudulent protection order. Mr. Goode and Counsel, for their second attempt, then knowingly provided false evidence to the Broomfield courts on July 17, 2018 and knowingly withheld pertinent evidence** from Magistrate Russell in ex parte hearing such as:    1. Mr. Goode and his Counsel were avoiding and evading case 18CV50 and trying (again) to gain unfair and unethical advantages by way of fraudulent criminal charges.    2.    They provided the Broomfield courts with Plaintiff's legal evidence against Mr. Goode for fraud and theft that they alleged as 'stalking' evidence and told flat out lies such as plaintiff made repeat phone calls when Plaintiff doesn't even have Mr. Goode's phone number.    **Defendant and his counsel knowingly lied (fabricated evidence) and withheld evidence from the Broomfield courts on July 17, 2018 (one month later) in order to attain the fraudulent temporary stalking protection order, as they had failed the first time. Mr Goode and his Counsel knowingly submitted 'bad faith' declarations.** (FRCP 56(h))

## REPLY TO FIRST AFFIRMATIVE DEFENSE

**5.**     On Page 6, FIRST AFFIRMATIVE DEFENSE, Defendant claims materials are not valid copyrighted materials and that he's not infringing. This was addressed in the Motion for Remand (Document 20) number 16 (c) (p17 and p18) and in short, **anything that is tangibly created is automatically a copyrighted material.**

However, directly contrary to Defendant and his Counsel alleging Plaintiff's materials are not copyright infringeable materials, **Defendant by and through his Counsel's actions attempted to perform a "removal" of case 18CV50 to a Federal court on the grounds of "copyright" laws and stating this lawsuit is a copyright matter, which attests to the fact that Mr. Goode and his counsel agree Plaintiff's materials are copyright infringed upon and copyright disputable materials.**  This is yet another example where Mr. Goode and his Counsel tell two different and contrary stories depending on what agenda they are trying to move forward. **Regardless to which story Defendant and his counsel choose to tell, the facts remain the same: Plaintiff's materials are lawfully considered copyrighted materials, Defendant has infringed on them through civil fraud,** and the matter is in litigation for protection of Plaintiff's private

property on Constitutional grounds along with the restoration of Plaintiff's good name.

## **REPLY TO SECOND AFFIRMATIVE DEFENSE**

6.      Page 6, SECOND AFFIRMATIVE DEFENSE, Defendant basically restates his FIRST AFFIRMATIVE DEFENSE and this was already answered. (see number 3, 4 and 5 above)

## **REPLY TO THIRD AFFIRMATIVE DEFENSE**

7.      Page 7, THIRD AFFIRMATIVE DEFENSE Defendant again states a claim was not made for relief. This was addressed in the Motion for Remand (Document 20) number 16(c) p18 and p19 and **relief sought was clearly stated in the Proposed Order** (Document 12-1 at 14 thru 16) **and remedy sought was also contained in the original complaint and subsequent mailings** (Document 20-2: at 5 of 49 – section 1 Remedies to Implement; and Document   20-4 – fines and fees and Certified Billing Statements containing approximately $70,000 due) and whereby *Non Rebutted Affidavits are "Prima Facie Evidence in the Case"* United States vs. Kis, *658 F.2d, 526, 536-337 (7th Cir. 1981);* and *"Uncontested Affidavit taken as true in support of Summary Judgment." -- Seitzer v. Seitzer, 80 Cal. Rptr. 688*

## REPLY TO COUNTERCLAIMS BACKGROUND

8.　　　On Page 7, number 1, in Mr. Goode's COUNTERCLAIMS BACKGROUND statement of Plaintiff being a "fan" of Mr. Goode's (page 7, number 1) this should be past tense.  Ms. Montalbano has barely followed any of Mr. Goode's work since the early February 2018 phone call, as it would only serve to further frustrate Plaintiff to see Defendant and/or his associates continue to utilize Plaintiff's handwritten dream visions as their own derivative, and often mutilated works, and not be able to prevent such activities.

## REPLY TO JURISDICTION AND VENUE

9.　　　On page 7, number 3; JURISDICTION AND VENUE,  Defendant's counsel misstates case 18CV50 as being opened by Plaintiff based on the Lanham Act and Copyright Act; which are statute based and the case was never opened based on statutes.  Plaintiff opened the case based on Constitutional law for fraud and theft of private property by Mr. Goode and thereby the state court has jurisdiction in accordance with an Oath of Office sworn by the presiding Judge or Magistrate to protect the rights of the people as guaranteed in the National and State Constitutions, and to which

Plaintiff's Constitutional rights had indeed been violated and the protection of those rights was sought through the courts and in accordance with due process of law, case law, Unrebutted Affidavits, and Federal and State rules of Evidence.  (See number 7 above and number 10 below)

10.      Page 7, JURISDICTION AND VENUE, numbers 4 to 7 Mr. Goode states removal to Federal court is proper based on statutes, this was addressed in OBJECTION TO NOTICE OF REMOVAL (Document 28), where it was (again) stated the matter was opened on Constitutional grounds and **Defendant and Counsel were noticed of Constitutional Law precedence and they consented** per acquiescence and agreement per an Oath of Office since unrebutted **June 11, 2018** certified mailing.  (Document 12-1 at 53 thru 58; and See numbers 7 and 9 above) and whereby *"Allegations in affidavit in support of motion must be considered as true in absence of counter-affidavit."* *[Federal case of Group v Finletter, 108 F. Supp. 327]; and at* point #4 *"uncontested allegations in affidavit must be accepted as true."* *Morris v National Cash Register, 44 S.W. 2d 433; and whereby "Silence can only be equated with fraud where there is a legal or moral duty to speak, or where an inquiry left unanswered would be intentionally misleading" U.S. v. Tweel, 550 F.2d 297, 299. (5th Cir. 1977) See also U.S.*

*v. Prudden, 424 F.2d 1021, 1032, 1033 (5th Cir. 1977); Carmine v. Bowen, 64 A. 932 (1906); and* **"An Affidavit _if not contested in a timely manner_ is considered _undisputed facts_ as a matter of law."** *Morris vs. National Cash Register, 44 SW2d 433;* And whereby it is now 5 (five) months since the original pre-litigation affidavit complaint was first served on Mr. Goode for response and whereby **Mr. Goode has repeatedly failed to respond in a 'timely manner' and continues to fail to respond, therefore a <u>Summary Judgment (FRCP Rule 56)</u> on Plaintiff's behalf is appropriate** and in proper accordance with due process of law and an Oath of Office to the State and National Constitutions.

## <u>REPLY TO FIRST COUNTERCLAIM</u>

11.     Starting on Page 8, FIRST COUNTERCLAIM, numbers 8 thru 11, Defendant restates Affirmative Defenses One and Two, that he's not infringing and materials are not copyrightable. (See Number 5 above) and in particular at number 10 Defendant states no 'enforceable rights;' **however unrebutted affidavits are enforceable and are 'prima fascie' evidence in court and are lawfully and legally enforceable** in addition to the courts having the right to enforce and protect Constitutional rights per an Oath of Office.  (See case law in numbers 7 and 10 above).

### REPLY TO SECOND COUNTERCLAIM

**12.**     Page 9, SECOND COUNTERCLAIM, numbers 12 thru 15, Defendant basically restates Affirmative Defenses and Counterclaims just stated and includes he's not engaged in unfair business practices.  **Plaintiff, states being defrauded (FRCP Rule 9(b)) of her tangible goods (hand written materials) by Defendant to use Plaintiff's materials as his own** on his syndicated show, Cosmic Disclosure, and other public mediums without remedy or attribution to the original author**, along with defaming the original author** (Document 34-5) **to maintain continued unethical use, _is_ unfair business practice.**

### REPLY TO CONCLUSION AND REQUEST FOR ATTORNEY FEES

13.     Page 9, CONCLUSION AND REQUEST FOR ATTORNEY FEES, here Defendant by and through his Counsel asks for monetary remedy to be awarded to him for his abuse of the legal system to further avoid and evade (FRCP Rule 37(a)(4)) responding to Plaintiff's complaint and again falsely states Plaintiff's claims are without merit (denial). This was again addressed in Motion for Remand (Document 20, page 20, number 16(e) and number

18) and whereby 'merit' is fully contained in Document 20-2 Amended Complaint; and merit is contained in every step of due process of law and as followed by Plaintiff to the best of her knowledge and abilities since mailing of the first lawful presentment dated April 18, 2018 for response.

# EVIDENCE

## SAMPLES OF PLAINITFF'S DREAM VISIONS
## AND SUBSEQUENT USE BY DENFENDANT, MR. GOODE

14.     To address the repeat denial by Mr. Goode and his Counsel of all the similarities in Defendant's derivative work(s) and to prevent further denial in court; Plaintiff has attached **Exhibit 8** with Dream Vision Samples 1 thru 4. Samples are from the specifically cited Dream Visions contained in the uncontested affidavit Complaint and complete details, dates, email information, and PDF file data can be seen therein. (Document 20-2)

Plaintiff also includes samples from Mr. Goode's derivative work titled "Mega Update" for court review of the evidence he and his counsel are continuing to avoid and evade (FRCP 37(a)(4)), rather than responding to and addressing Defendant's use of Plaintiff's private property (handwritten

dream visions) on a point by point basis in order to lawfully move forward genuine and meaningful negotiations. (Colorado Constitution, Article II, Sections 14 and 15)

Below are the links to where Mr. Goode's alleged 'Mega Update' (derivative work) was first known to be published; to which he does <u>not</u> have the original author, Plaintiff's, permission to create; and is posted on Mr. Goode's, associate/co-host, David Wilcock's website:

Mega Update Part 1

https://divinecosmos.com/davids-blog/1225-abr-legacy/

Mega Update Part 2

https://divinecosmos.com/davids-blog/1225-abr-legacy/2/

## EVIDENCE SAMPLE 1

a)    In Document 20-2 at 13 thru 14 of 49, number 2-11, Plaintiff (Petitioner), points out how Mr. Goode (Respondent's) entire alleged off-world "Mega Update" experience 'synchronistically' occurred on the same date (December 16, 2017) as Plaintiff's likely-off-world dream vision experience. Defendant derivative work similarities are contained

in "Mega Update" (Part 1) sections titled: YOUR TURN IN THE CHAIR; I AM READY; THE SUPER FEDERATION BROKE COSMIC LAW; REMEMBER THE PONCE SYSTEM; and DO YOU KNOW WHAT THIS MEANS. **In Plaintiff's dream vision experience** she and her Twin Flame start off in a car and a handful of military-brass guys come in for a long time planned meeting. The military guy claps her Twin Flame on the shoulder to see if he's 'ready' by asking "what's it gonna be man?' Plaintiff's Twin Flame indicates he's 'ready.' The military guy then takes her and her Twin Flame to stand center stage in front of a huge crowd of military-like people with a few other couples standing behind them and she is then married to her Twin Flame. After there is cheering and clapping, yet it's all still docile (quiet) and calm. Plaintiff writes her Twin Flame is now starting to open up some more and is more relaxed and writes twice she is 'ready' for what is coming next, although a little nervous. **Subsequently, Mr. Goode 'synchronistically' utilizes and mutilates** a solid portion of the same basic dream vision elements in his derivative work, to include 'his' alleged off-world trip also occurred on December 16, 2017 and the military is involved and there is a large planned meeting to commence. Once off world he has a military buddy tell him to think to himself he is 'ready' for what is coming next; he's

shaky (nervous). Defendant thinks to himself he's 'ready' and he goes up onto the platform (center stage) in front of the delegate (crowds). Once on stage instead of being with a romantic partner, Mr. Goode is feeling lots of love from his very tall male blue bird alien friend who is standing behind him with another being. Defendant notes his alien friend is opening more of himself up to him than before. Defendant is instructed to repeat legal statements (similar to how traditional wedding vows are done) and after that he does not recall what he said (also sometimes typical to wedding vows…lol). He then feels very emotional and doesn't know why; after that about a third of the crowd stands up to all plead their case at once and are moving arms around and talking, but no sound was heard (quiet). (**See Exhibit 8 - Evidence Sample 1**).

## EVIDENCE SAMPLE 2

b)     In Complaint Document 20-2 cited at 10 of 49, Mr. Goode, Defendant, creates a mutilated derivative work of Ms. Montalbano's Twin Flame axe house dream story. Derivative work similarities are contained in Mr. Goode's Mega Update (Part 1) sections titled:

ENGAGED IN BATTLE; REPTILLIAN BEING IN A CONTAINMENT BUBBLE; and SNAP!. **In Plaintiff's dream vision experience**; Plaintiff has one female friend with her and her Twin Flame. She and her Twin Flame are participants that must safely navigate their way through a house with axe's that swing down from the ceilings and up from the floors. She was on a mission to change her shirt (clothing). Plaintiff has to lay on the floor to avoid axes a couple of times. There is also a head-chopper guy. At the end Plaintiff cries out in frustration, "Are you kidding me! Isn't there a single room in this house that ISN'T booby trap/rigged with something to kill me!" (survivor of trauma). **In Defendant's mutilated derivative work** he tells a story of entering into a room reminding him of a healing medical treatment room (for survivors of trauma). He then sees others with axes and (of course) they die and are lying on the floor and then their 'axes' are hovering about two feet above the floor. Then, one of the people with an axe – equal to an axe head chopper guy – kills the main alien being likely responsible for the death of his friends. Defendant also takes time to describe a being's clothing. **(Exhibit 8 - Evidence Sample 2)** Mr. Goode also includes details regarding containment spheres that are also a mutilation of Plaintiff's containment sphere stories and whereby containment spheres proper use is for

protection, healing, and transmutation (not murder, like in Defendant's mutilated story). Defendant also describes the alien being that was murdered as having 'olive' green skin stretched across more human features and there was a 'mirage'/hard-to-see effect and 'synchronistically' this description is similar to another of Plaintiff's dream vision experiences that involved her face morphing into a similar type face/head and where 'spring' green was the color.

## EVIDENCE SAMPLE 3

c)    In Complaint Document 20-2 start at 18 of 49, number 2-17 thru 2-18, Mr. Goode, Defendant, creates a mutilated derivative work in his alleged "Mega Update" (Part 2) sections titled: I HAVE A TREAT and WAIT UNTILL YOU HEAR WHAT WE FOUND; ENTERING THE VESSEL; and I FOUND SOMETHING; **Plaintiff's dream vision contained** a large monstrosity (derelict) and very beat up looking red-orange-rust color space object, with some kind of odd paneling, that was entering the solar system to help planet Earth.  She was signing a king's contract for it in a meeting. Later photos of the contract were sent to her cell phone. The

space object was also large like a skyscraper or space station. **In Mr. Goode's derivative work "Mega Update" (Part 2)** he tells a story of a large derelict cigar shaped space object (illustrated by one of his associates that looks a brown-red (rust) color entering our solar system. He further states it has dents and holes (describing and embellishing on Plaintiff's attempted Dream Vision drawing of the odd paneling exterior of the hull) Defendant proceeds to mutilate the story so it's basically a piece of useless junk already stripped of useful technology which was discovered missing once panels were removed from the walls, ceilings. and floors. Defendant then proceeds to incorporate other distinct elements from Plaintiff's Dream Vision Journalings to include photos taken. **He combines this Dream Vision story with another of Plaintiff's Dream Visions** that included pterodactyls, a history hologram projection show about dinosaurs and similar 'stone' age relics (millions or so years ago) to commence on a large domed ceiling.  The hologram show in the domed area was in another location and was reached by walking/swimming in a river, ice was mentioned (ice skating), and flesh chunks accidentally came off of a guy's face (chin) into Plaintiff's thumb, 'index,' and middle finger. Plaintiff also took photos and wore a swim 'suit.' **In Mr. Goode's derivative work** he describes a meeting

where a large smart-glass-pad monitor (show screen) lowered from the ceiling that had been monitoring a derelict spaceship entering the solar system that had a stone-like exterior hull texture with ice on it. He also says the interior had once been pressurized with water (walking/swimming) and goes on to say some of the original crew of the ship were pterodactyl-like. This 'crew' was (of course) dead for a long time, even millions or billions of years and their bodies' flesh chunks came off and were collected by guys using the paneling like spatulas who took cell phone footage that was displayed back onto a monitor (like a show) for others. Typical to outer space, he has men wearing space 'suits' and mentions a dome on the spaceship hull at another section. Mr. Goode also 'synchronistically' describes the flesh color as "pale blue skin that was almost white." Whereby, Plaintiff had described the flesh chunks " Sorta white and light yellow and fleshy tone color." Defendant's friend 'synchronistically' uses his index finger to touch his face (nose) to indicate the beings are the Ancient Builder Race. **(Exhibit 8 - Evidence Sample 3)**

d)      In Complaint Document 20-2 at 20 of 49, number 2-19, **Mr. Goode, Defendant, creates a derivative work** in his alleged "Mega Update" (Part 2) section titled WRITING AND GLYPHS. **In Plaintiff's dream**

**vision** there are two walls with two different types of glyphs on each wall; in **Defendant's derivative work he** describes two different types of glyphs being discovered on the walls and ceilings (two locations) and describes them sounding similar and more embellished to the attempted drawings by Plaintiff in her shared Dream Vision journaling. However, he describes them as being intricate, which is more like Ms. Montalbano, (aka artist Ari Stone), intricate Energetic Portal Design (EPD) art (www.AriStoneArt.com) and whereby at Mr. Goode's public speaking event, Eclipse of Disclosure 2017, a female associate speaker of his used one of Plaintiff's EPD artworks (titled Intuition) in her presentation/slide show that she titled "Modern Day Shamans" without remedy or attribution to Plaintiff, artist Ari Stone.  **(Exhibit 8 - Evidence Sample 3)**

e)      In Complaint Document 20-2 at 20 thru 21 of 49, number 2-20, Defendant creates a derivative work in alleged "Mega Update" (Part 2) section titled A MULTI-DIMENSIONAL LANGUAGE. **In Plaintiff's dream vision experience,** she performs advanced mathematical calculations of the Universe faster than anything her brain can keep up with and she utilized a calculator type device in a half watermelon. **Subsequently, Defendant briefly** states the hieroglyphs were a mixture

of a language and a hyper-dimensional form of math and then stated the conversation went into classified operational info.

**(Exhibit 8 - Evidence Sample 3)**

The following are four samples of cited derivative works where Mr. Goode, Defendant, alleges Ms. Montalbano, Plaintiff's, dream vision experiences as his own personal experiences (fraud) on his syndicated show, Cosmic Disclosure, carried at GAIA INC.

## EVIDENCE SAMPLE 4

f)    In Complaint Document 20-2 at 22 of 49, number 2-21, Mr. Goode, Defendant, utilizes a handful of Plaintiff's dream visions to allege as his own off-world or otherwise experience(s) for his syndicated show, **Cosmic Disclosure, Season 9, Episode 1**. At the following approximate time stamps, Defendant alleges the following experiences as his own:

1) **1:53**– 3D light puzzle he formed with his mind as a child;

2) **3:19**– spaceships appearing as pirate ships when he was a child;

3) **11:00**– hand held devices to relay emotion readings of ETs;

4) **11:50** – USB brain downloads;

**(See Exhibit 8 - Evidence Sample 4)**

While Mr. Goode clearly has a different view of the events that have transpired to this point and he is obviously more well-known than Plaintiff, neither of those features justify him defaming Ms. Montalbano to mutual associates (Document 34-5) to maintain his fraud of using Plaintiff's Dream Vision experiences and materials as his own work, information, and/or experiences. The list of Mr. Goode's 'synchronistic' and derivative use of Plaintiff's Dream Vision materials is somewhat extensive and more fully contained in the Amended Complaint and as lawfully served upon Mr. Goode for response since first presentment dated April 18, 2018.

Therefore, in accordance with due process of law, and for Defendant's continued avoidance and evasion (FRCP Rule 37(a)(4)) in answering the Complaint for 5 (five) months; a confession on the merits is warranted and a Summary Judgment is to be entered on Plaintiff's behalf in accordance with FRCP Rule 56 and an Oath of Office to the State and National Constitutions to uphold Due Process of Law and protect the right of the people.

Respectfully Submitted and All Rights Reserved,

Alyssa Chrystie Montalbano

Plaintiff, Alyssa Chrystie Montalbano, American Citizen

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing **REPLY TO DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** and **EXHIBIT 8 with Samples 1 thru 4** were sent first class by U.S. Mail, postage prepaid, USPS Priority Mail Express, EM 033657174 US to OFFICE OF THE CLERK, UNITED STATES DISTRICT COURT, Alfred A Arraj Courthouse, 901-19TH ST., Room A105, Denver, CO 80294-3589 this 20th day of September, 2018 and is lawfully served upon Defendant's counsel by service through the Case Management/Electronic Case Filed (CM/ECF) court filing system.

Alyssa-Chrystie: Montalbano, American Citizen

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

# PRIORITY
## ★ MAIL ★
# EXPRESS™

OUR FASTEST SERVICE IN THE U.S.

EP13F July 2013   OD: 12.5 x 9.5

PS 1000 1000006

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

USPS

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

**WRITE FIRMLY WITH BALL POINT PEN ON HARD SURFACE TO MAKE ALL COPIES LEGIBLE.**

PAYMENT BY ACCOUNT (if applicable)

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)    PHONE ( )

Alyssa Montalbano
2536 Rimrock Ave
100-117
Grand Junction, CO 81505

**DELIVERY OPTIONS (Customer Use Only)**

☐ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1)
Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4)
Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's
mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)    PHONE ( )

United States District Court
Alfred A Arraj
901 19th Street, A105
Denver, CO
80294 25 87

ZIP + 4® (U.S. ADDRESSES ONLY)

LABEL 11-B, OCTOBER 2016    PSN 7690-02-000-9996    3-ADDRESSEE COPY







**UNITED STATES POSTAL SERVICE**

---






1007

80294

U.S. POSTAGE PAID
PME 1-DAY
GRAND JUNCTION, CO
SEP 20, 18
AMOUNT
**$24.70**
R2303S104271-31

**UNITED STATES POSTAL SERVICE®**

INTERNATIONAL USE

# PRIORITY
## ★ MAIL ★
# EXPRESS™

**ORIGIN (POSTAL SERVICE USE ONLY)**

PO ZIP Code
8501

Day of Delivery
☐ 1-Day   ☐ 2-Day   ☐ Military   ☐ DPO

Scheduled Delivery Date (MM/DD/YY)
9-21-18

Postage
$ 24.70

Date Accepted (MM/DD/YY)
9-20-18

Scheduled Delivery Time
☐ 10:30 AM   ☐ 3:00 PM   ☐ 12 NOON

Insurance Fee
$

COD Fee
$

Time Accepted
11:55   ☐ AM   ☐ PM

10:30 AM Delivery Fee
$

Return Receipt Fee
$

Live Animal Transportation Fee
$

**DELIVERY (POSTAL SERVICE USE ONLY)**

Delivery Attempt (MM/DD/YY)   Time   ☐ AM   ☐ PM

Employee Signature

Delivery Attempt (MM/DD/YY)   Time   ☐ AM   ☐ PM

Employee Signature

Special Handling/Fragile
$

Sunday/Holiday Premium Fee
$

Total Postage & Fees
$

Weight   ___ lbs   ___ ozs

Acceptance Employee Initials

Flat Rate ☐